SEALED MATTER

| | | |
|---|---|---|
| AO 106 (Rev. 04/10) Application for a Search Warrant | AUSA: Sara D. Woodward<br>Task Force Agent: Andrew Carriger | Telephone: 313-226-9180<br>Telephone: 313-919-1593 |

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 2:16-mc-50736-1
Location information for T-Mobile/MetroPCS phone )
313-808-4761 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.

located in the _____ District of New Jersey _____, there is now concealed *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

The basis for the search under Fed.R.Crim.P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1591 | sex trafficking |

The application is based on these facts:
See attached AFFIDAVIT.

☐ Continued on the attached sheet.
☒ Delayed notice of 30 days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

FILED
JUL 12 2016
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

Sworn to before me and signed in my presence.

Date: 7/12/2016

City and state: Detroit, Michigan

*Applicant's signature*
Task Force Officer Andrew Carriger, FBI
*Printed name and title*

*Judge's signature*
David Grand, U.S. Magistrate Judge
*Printed name and title*

## Affidavit

I, Andrew Carriger, being first duly sworn, hereby depose and state as follows:

1. I am employed by the Romulus Police Department as a Police Officer and assigned to the Federal Bureau of Investigation (FBI) as a Task Force Officer (TFO), and have been so assigned since January 2016. I am currently assigned to the Southeast Michigan Trafficking and Exploitation Crimes (SEMTEC) Task Force and have been assigned investigations involving child sexual exploitation.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses. I make this affidavit based upon personal knowledge as well as upon conversations and communications from others who have personal knowledge of the events and circumstances described herein.

3. I am making this affidavit in support of a search warrant to T-Mobile/Metro PCS seeking geolocation data (as further described in Attachment B) for the following phone number: **313-808-4761**. As explained below, I believe that this phone number is currently being used by VINCENT FORNEY aka VEDO.

## Probable Cause

4. On January 20, 2016, Madison Heights Police responded to the Days Inn hotel in Madison Heights, Michigan. Police encountered a 17 year-old girl

1

(hereinafter Minor Victim One, or MV-1) who reported that MITRIS POINTER, aka BARBIE, had assaulted her and taken her phone.

5. The next day, MV-1 contacted law enforcement and reported that POINTER and others had been prostituting her and taking her money. In response to this report, your affiant and SEMTEC Task Force Officer Edward Price interviewed MV-1 on January 21, 2016. During this interview, MV-1 stated:

    a. Around December 2015, MV-1 got a tattoo from a tattoo artist named "VEDO." At some point after she got her tattoo, VEDO found MV-1 on Facebook and asked her if she wanted to make some money. MV-1 identified VEDO's Facebook page as "Vedo Tat Man." MV-1 stated that VEDO told her through Facebook that she would make a lot of money per night by sleeping with men. MV-1 agreed to meet up with VEDO.

    b. VEDO and another male that MV-1 knew as "Meech" picked MV-1 up and took her to the Hawthorn hotel in Southfield, Michigan. At the hotel were the following individuals: VEDO, "Meech," MITRIS POINTER (aka Barbie, aka Chyna), "Dominique," "Juice, "Savage," and "Flo."[1]

---

[1] Investigator's note: The true identities of many of these individuals have been determined by law enforcement. They are all over the age of 18.

2

c. Once in the room, VEDO again told MV-1 that they were going to make money by her sleeping with men. VEDO told her they would make around $800 a night. VEDO then posted an ad for MV-1 on Backpage.com. MV-1 stated that VEDO used photographs of another female to attach to the Backpage.com advertisement, and that she was not photographed. The advertisement was created on POINTER's Backpage account, and MV-1's phone number was used. MV-1 stated that POINTER taught her how to answer the phone calls and how to get a date.

d. On that first night of doing dates, MV-1 stated she made about $600 dollars. She further stated that she only was able to keep about $260, and VEDO took the rest from her. MV-1 stated the only reason she got to keep even the $260, was because she had it tucked away and VEDO did not know about it.

e. Approximately one to two weeks later, MV-1 went to the Marvin's Gardens Hotel in Southfield, Michigan. MV-1 stated she was with VEDO, POINTER, "Dominique," "Juice," "Savage" and "Meech" again. MV-1 stated that VEDO started to post her again on www.backpage.com and she was getting a couple of dates. MV-1 stated she decided to hide the money again to keep some of it. MV-1

3

stated she hid approximately $100 in her bra. VEDO came into her room once the dates were gone to collect the money. VEDO saw the $100 sticking in her bra and told her to give him the money. When she did not give the money up right away, VEDO, with a closed fist, punched MV-1 on the left side of her face and took the money from her bra. MV-1 then called her grandmother to come pick her up.

f. On or around January 8, 2016, MV-1 was picked up by "Flo" and taken to the Hilltop Inn in Redford, Michigan. Flo dropped her off at the hotel and she was left with POINTER and VEDO. POINTER and VEDO told MV-1 that she was going to do dates. MV-1 stated she did two (2) dates on that night. After she completed the first date and received $160, POINTER came into the room demanding the money from MV-1. MV-1 and POINTER argued over the money briefly until MV-1's second date arrived. POINTER left the room so MV-1 could complete her second date. Once MV-1 completed her second date, she immediately called her grandmother for a ride home. MV-1 stayed in the room so POINTER and VEDO would think she was still on her date, while she waited for her grandmother to arrive. Once MV-1's grandmother arrived, MV-1 ran out and got in the car with her grandmother and went home. MV-1 stated over the next week or so,

she received numerous messages from various social media sites, mainly Facebook, stating that she owed VEDO money and needed to give him his money back.

g. On or around January 20, 2016, "Dominique" contacted MV-1 and asked her if she wanted to go hang out at a hotel. MV-1 stated she did and asked her friend, Minor Victim Two (MV-2). MV-2 agreed and went with MV-1. When MV-1 got to the hotel, "Dominique" told her that she already had two dates lined up for her. MV-1 went to the bathroom to call her grandmother, and when she came out of the bathroom, VEDO, "Savage," and POINTER were in the room. POINTER immediately snatched MV-1's phone from her hands, punched her, and stated: "You ain't going nowhere." POINTER then took $150 from MV-1's wallet. MV-1 tried to get her phone back and leave, but VEDO, POINTER, and "Savage" would not let her. "Savage" put MV-1 in a chokehold. VEDO and "Savage" pushed MV-1 into the bathroom. VEDO and "Savage" proceeded to punch and kick MV-1 and pull her hair out. Once the physical altercation ceased, VEDO and "Savage" told MV-1 she better not call the police. MV-1 was able to grab "Dominique's" phone from her hand and run out of the room. She was able to call her grandma who came to the

hotel to pick her up. Once MV-1's grandma arrived, the police were called.

6. Your affiant has determined that "VEDO" is VINCENT THEODORE FORNEY (XX/XX/1990).

7. During her interview, MV-1 provided your affiant with several phone numbers of contacts that were involved in the incident, to include **(313) 808-4761**. MV-1 identified this number as VEDO's cell phone number.

8. On January 21, 2016, MV-2 was also interviewed by your Affiant and TFO Price. MV-2 was 17 years-old. MV-2 reported:

   a. On or around January 20, 2016, she was at the Days Inn in Madison Heights with MV-1, VEDO and POINTER. MV-2 confirmed that VEDO and a man with tattoos on his face[2] had MV-1 in a choke hold and that both VEDO and the tattooed faced man were actively punching MV-1. MV-2 was in the main room area by the beds with POINTER. MV-2 stated the assault on MV-1 started near the beds and moved into the bathroom. MV-2 stated she couldn't see into the bathroom because POINTER was watching her and told her not to leave.

---

2 "Savage" has been identified as law enforcement as OLIVER ANDREW WEDDINGTON (XX/XX/1986).

    b. MV-2 had phone numbers from some of the people involved stored in her phone. When asked if she had VEDO's number, MV-2 checked her phone and then gave the number **(313) 808-4761**, as VEDO's number.

9. On May 18, 2016, your affiant served Facebook with a search warrant for VEDO's Facebook page. On June 8, 2016, your affiant received the results from the search warrant from Facebook. After reviewing the results from VEDO's Facebook page, your affiant saw that VEDO consistently provided phone number **(313) 808-4761** to other Facebook users as his telephone number. I also reviewed Facebook messages from VEDO as far back as January 2015, where he was using the listed number. In messages from October 2015, VEDO provided the same telephone number as his contact. The most current messages in the Facebook results, April 2016, showed VEDO giving his contact number through messages as **(313) 808-4761**.

10. On June 21, 2016, affiant and Special Agent Conolly met with BRITTANY TARROW, date of birth 11/2/1996. TARROW was originally interviewed on May 25, 2016 from a previous operation. In her initial interview, TARROW stated she had worked for VEDO. TARROW stated that "Angel" was only 17 years old and working as a prostitute for VEDO.

7

11. When affiant and SA Conolly met with TARROW on June 21, 2016, TARROW stated she had just recently seen VEDO at a hotel in Madison Heights. TARROW stated she saw "Angel" with him.

12. On June 22, 2016, in connection with an undercover operation to recover juvenile victims of sex trafficking, your affiant came in contact with KATY MCKENZIE, date of birth XX/XX/1993. MCKENZIE was at the hotel where the undercover operation took place. MCKENZIE spoke with your affiant and gave written consent to search her cellular phones. On MCKENZIE's ZTE cell phone, MCKENZIE had the contact of "VITO" stored with the number **(313) 808-4761** attached. MCKENZIE was asked about the number, and she stated she knew "VITO" as her "Weedman." She had been in contact with "VITO" as recent as June 21st, 2016 using the number **(313) 808-4761**.

13. Through the course of this investigation, I have concluded that VEDO is operating as a pimp, and that he has contact with his victims on a daily basis. At the end of the night, VEDO will call his victims or have his victims call him and coordinate when he is going to collect the money his victims made for the day. VEDO consistently uses the phone number **(313) 808-4761**. It is believed that VEDO is still in possession and using the cell phone with the number **(313) 808-4761** and has a minor victim, known as "Angel," working as a prostitute for him.

14. Based on my training and experience, I know that suspects involved in sex trafficking will use the Internet to facilitate their criminal enterprise. Sex traffickers use the Internet to post advertisements for prostitution. I also know, based on my training and experience, that suspects involved in sex trafficking will use cell phones to facilitate their criminal enterprise.

### Authorization Request

15. WHEREFORE, pursuant to Federal Rule of Criminal Procedure 41, it is requested that the Court issue a Warrant and Order authorizing the acquisition of the Requested Information and directing to T-Mobile/Metro PCS, the service provider for **(313) 808-4761**, to furnish the technical assistance necessary to accomplish the acquisition unobtrusively, and with a minimum of interference with such services as that provider accords the user(s) of the Target cellphone, for a period of thirty (30) days. Reasonable expenses incurred pursuant to this activity will be processed for payment by the FBI.

16. IT IS FURTHER REQUESTED that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target cellphones outside of daytime hours.

17. IT IS FURTHER REQUESTED that the warrant and this affirmation, as it reveals an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against fugitives, and

better ensure the safety of agents and others, except that working copies should be made available to the United States Attorney's Office, the FBI, and any other law enforcement agency designated by the United States Attorney's Office.

18.   IT IS FURTHER REQUESTED that, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), the Court authorize notice to be delayed for a period of 30 days after the termination of the execution of the warrant.

## Conclusion

19.   Based upon the facts set forth in this affidavit, there is probable cause to believe that VINCENT FORNEY, aka VEDO, is using phone number **(313) 808-4761**, and the geolocation data will allow law enforcement officers to locate additional victims and evidence of FORNEY's sex trafficking.

Respectfully submitted,

Andrew Carriger
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on July 12, 2016

DAVID GRAND
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## Property to Be Searched

1. The cellular telephone assigned call number **(313) 808-4761**, (the Target Cell Phone), whose wireless service provider is T-Mobile/MetroPCS.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of T-Mobile/MetroPCS.

## ATTACHMENT B

## Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile/Metro PCS (hereinafter, "the Provider"), the Provider required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The

government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

This warrant will be returned to the issuing judicial officer within 10 days after the termination of the execution of the warrant.

Pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), service of notice may be delayed for a period of **thirty (30)** days after the termination of the execution of the warrant.

The Provider, its affiliates, officers, employees, and agents are asked not disclose the Court's Order or the underlying investigation, until notice is given as provided above.

AUSA: Sara D. Woodward    Telephone: 313-226-9180
Task Force Agent: Andrew Carriger    Telephone: 313-965-2323

93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Location information for T-Mobile/MetroPCS phone<br>313-808-4761 | )<br>)<br>)  Case No. 2:16-mc-50736-1<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of ____New Jersey____
*(identify the person or describe the property to be searched and give its location)*:
See ATTACHMENT A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See ATTACHMENT B.

FILED
JUL 12 2016
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

YOU ARE COMMANDED to execute this warrant on or before ____7/26/16____
                                                                                                *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10 p.m.    ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
_____.
                *(name)*

☑ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for __30__ days *(not to exceed 30)*.
                                                                 ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   07/12/2016 a_3:31 pm_    _____
                                                                                                Judge's signature

City and state:   Detroit, Michigan                 David Grand, United States Magistrate Judge
                                                                                        *Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **(313) 808-4761**, (the Target Cell Phone), whose wireless service provider is T-Mobile/MetroPCS.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of T-Mobile/MetroPCS.

# ATTACHMENT B

## Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile/Metro PCS (hereinafter, "the Provider"), the Provider required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The

government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

This warrant will be returned to the issuing judicial officer within 10 days after the termination of the execution of the warrant.

Pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), service of notice may be delayed for a period of **thirty (30)** days after the termination of the execution of the warrant.

The Provider, its affiliates, officers, employees, and agents are asked not disclose the Court's Order or the underlying investigation, until notice is given as provided above.